## THE NEW LAW AS TO BILLS OF EXCEPTIONS AND THE NEW LAW AS TO MECHANICS' LIENS.

[Circuit Court of Lucas County.]

GEORGE F. C. KLOEPPINGER v. JOSEPH GRASSER.

Decided, July 3, 1903.

*Bills of Exceptions—Under Section 5201 as Amended—The Filing, Examination and Allowance of—May Be Signed Before the Fifty-second Day, but Not Later than the Fifty-fifth Day—An Entry of Filing, etc., Not Evidence as to These Steps—Bills of Exceptions Before Justices of the Peace—Under Section 6565—Mechanic's Lien Law—Act of May 18, 1902, May Be Applied to Contracts Previously Entered Into, When—Its Partial Retroactive Operation Defensible—Sub-contractor's Remedy at Law Saved—The Section Construed—Pleading—Parties.*

1. Where the record does not disclose whether a bill of exceptions was filed with the clerk before it was signed by the trial judge, both filing and signing having occurred on the same day, it will be presumed the proceedings in that regard were regular and the bill valid.

2. The evidence as to what was done with reference to the filing, examination and allowing of a bill of exceptions must, under the present law, appear upon the bill itself; an entry reciting these facts (as under the statute before amendment) can not be considered.

3. The amended section (5201) does not deprive the trial judge of jurisdiction to sign a bill of exceptions before the expiration of fifty-two days from the overruling of the motion for a new trial; but, all parties to the bill being satisfied therewith, he may in his discretion sign it before the expiration of the fifty-second day, and such action will be valid and not premature.

4. A statute acts upon the state of facts at the time existing. Hence, it does not give a retroactive effect to the act of April 18, 1902 (95 O. L., 210), to apply its provisions to a building contract, entered into between the owner and the principal contractor and between the principal contractor and a sub-contractor prior to the passage of this act, where the indebtedness of the owner to the head contractor and the notice were of a date later than the passage of this act.

5. But granting that by applying this act to such a case would make it in some respects retroactive, it would not necessarily be uncon-

stitutional for that reason, and it would not necessarily be wrong to give it that operation.

6. Section 3197 has the effect of saving to the sub-contractor his remedy by an action at law against the head contractor.

PARKER, J.; HAYNES, J., and HULL, J., concur.

This is a proceeding brought to obtain the reversal of a judgment of the court of common pleas of this county. The parties stood upon the record in the court below as they do here. A petition was filed in which Kloeppinger undertook to recover a judgment against Grasser on account of certain transactions, under favor of the provisions of the mechanics' lien law of Ohio. To this petition an answer was filed, making up certain issues. A jury was impanneled and a witness sworn on behalf of the plaintiff, and then objection was made to the introduction of any evidence on the ground that a cause of action was not stated in the petition and the objection was sustained, the trial judge taking that view of the matter. Thereupon the court instructed the jury to return a verdict in favor of defendant, which was done, and upon that verdict a judgment was entered, a motion for a new trial having been overruled.

The first question presented is as to the validity of the bill of exceptions; it being apparent that a bill of exceptions is necessary to bring up the questions which the plaintiff in error seeks to present.

The motion for a new trial was overruled on the 12th day of March, 1903, and judgment was entered upon the same day, so that it is apparent that the case, as to the bill of exceptions, comes under the provisions of the statute found in Vol. 96, O. L., at page 16. That statute, passed October 22, 1902, amends Section 5301, adds Section 5301a, 5301b, and also amends Section 5302, repeals former Sections 5301 and 5302, and contains a provision that after January 1, 1903, it shall apply to pending cases.

The bill of exceptions was signed upon the 23d day of March, 1903, which was eleven days after the overruling of the motion for a new trial and the entering of judgment. It is contended by counsel for defendant in error that the bill of exceptions should be stricken from the files and not regarded:

First. Because it was not filed with the clerk before it was signed by the judge, as required by this act of October 22, 1902.

Second. Because it was signed by the judge before the time had arrived within which he might sign it, that is to say, that it was signed prematurely.

It is alleged that the judge was without jurisdiction in the premises until the arrival of a certain period provided by the statute; that he was as clearly without jurisdiction as he would have been had he undertaken to act after the expiration of the period.

Now as to the first point: That it was not filed before it was presented to the trial judge. Without passing upon whether that is important or essential, we observe that the bill of exceptions was signed on the 23d of March, 1903, and was filed upon the 23d day of March, 1903, and we have no evidence in the record, or otherwise, as to which event first transpired, but the presumption in favor of the legality and regularity of the proceedings, would, therefore, save the bill of exceptions against that objection. It would require us to assume that it was first filed, if it were necessary to indulge any presumption upon this question.

The other question arises upon the provisions of 5301, R. S. After providing that the party excepting must reduce his exceptions to writing and file the same within forty days after the overruling of the motion for a new trial, or the decision of the court where a motion for a new trial is not filed, it provides that "thereupon the clerk shall forthwith notify the adverse party, or his attorney, of the filing of such bill." And it then proceeds: "Within ten days after such forty days, any other such party may file in the cause any objection or amendment he may propose to the bill. The clerk of said court, at a time not less than twelve, nor more than fifteen days, after forty days from the overruling of the motion for a new trial shall transmit to the trial judge or judges, the bill together with all objections and amendments, if any, filed thereto." And that, counsel insists, means that not less than fifty-two days after the overruling of the motion for a new trial, nor more than fifty-five days after that time, the bill of exceptions must be transmitted by the clerk of the court to the trial judge.

And then Section 5301a provides that the trial judge, upon receipt of the bill, shall endorse thereon when it was received by him, "and within five days after the receipt of the bill, and the

objections or amendments thereto, if any, to correct the bill, if necessary, and allow and sign the bill and immediately transmit the same or cause to be transmitted to the office of the clerk of of the court." And there are certain other special provisions in the event of the absence of the judge.

I find in a journal entry of the date of the allowance and signing of the bill, to-wit, the 23d of March, 1903, the following:

"This day came the plaintiff and presented to the court his bill of exceptions herein, and it being shown to the court that the same has been presented to counsel for the defendant within the time limited by law and that the same has been approved by defendant's counsel, and the court being satisfied that the same. is in all respects true and correct, allowed, signed and sealed the same, and orders that it be made a part of the record herein, but not to be spread at large thereon."

But, with respect to that, counsel for defendant in error urge that no such journal entry being necessary—it not being provided for by the statute—we can not consider it as evidence of the facts recited therein. The statute upon that subject is very different now from what it was before the act of October 22, 1902. Formerly it was necessary to have the allowance of the exceptions appear upon the journal. Whereas now, by Section 5302 it is provided:

"It shall not be necessary to cause an entry to be made upon the journal of the court of the settling, allowance and signing of any bill of exceptions; but the signature of the trial judge, or other judge mentioned in Section 5301a, allowing, settling and signing such bill, shall be sufficient evidence of such fact."

And we are inclined to think that the objection to the consideration of this journal entry as evidence of the facts stated in it, is well taken; that the evidence of what was done about filing it, presenting it to the counsel and to the court, and about allowing it, etc., should now appear upon the bill of exceptions itself. But, upon this bill of exceptions we find this endorsement, which it is conceded by counsel for defendant in error was placed there by them upon the date there stated: "Approved March 23, 1903. Seney & Johnson, attorneys for defendant."

Still it is urged that that does not meet the objection here; that though counsel may have waived a limitation of time pro-

vided for in the statute for their examination of the bill of exceptions, they could not make any waiver that would be binding upon the court and they could not make any indorsement which would confer jurisdiction upon the court, and they insist that it is a jurisdictional question and that the court could not act upon the matter until after fifty-two days after the overruling of the motion for a new trial.

Lately we had a like question before us in Wood county, under Section 6565 of the Revised Statutes, as it appears in Vol. 93, O. L., p. 104, which is a statute providing for the taking of a bill of exceptions before justices of the peace.   It reads as follows:

"In all cases before a justice of the peace, whether tried by jury or by the justice, either party shall have the right to except to the decisions of the justice upon any matters of law arising in the case.   The party objecting to the decision must except at the time the decision is made, and if requested by the party objecting, time shall be given to reduce the exceptions to writing, but not more than ten days, nor less than five beyond the date of overruling of the motion for a new trial, or from the date on which the decision of the justice is rendered."

In the case presented to us the bill of exceptions was prepared and approved by opposing counsel and allowed by the justice before the expiration of five days; it was not done between the fifth and the tenth day, and it was insisted that that was premature, that the justice was without jurisdiction; that he must wait until the expiration of five days since it was provided that the time fixed was not more than ten nor less than five days after certain action by the justice.   We overruled that objection, being of the opinion that it was a limitation that the court allowing the bill of exceptions might insist upon or might not, at his pleasure; that it was not a jurisdictional matter at all.   And we entertain the same view of the statute here under consideration, that the trial judge in his discretion, all the parties to the bill of exceptions being satisfied with it, may sign it before the expiration of the fifty-second day after the overruling of the motion for a new trial and the entry of judgment, and his action in the premises will be valid.   The case is not like one of the expiration of the limitation of time, for instance, after the expiration of the fifty-fifth day, which, under the rulings under the old law left the court without jurisdiction.

So we overrule the motion to strike the bill of exceptions from the files.

This brings us to the consideration of the main question presented, *i. e.*, whether the court erred in refusing to allow plaintiffs to submit evidence in support of the cause of action which they have undertaken to state in their petition.

In order that the question may be understood it will be necessary to read the petition:

"Plaintiff alleges that on or about the 17th day of February, 1902, the defendant, Joseph Grasser, entered into a written contract with one John V. Arnsman, as principal contractor, for the furnishing of material and the construction by said Arnsman of the building known as the Bellview Park Pavilion, in the city of Toledo, Ohio, for which the said defendant was to pay the sum of thirteen thousand five hundred and forty-one dollars.

"And in addition thereto, afterwards, at the request of the said defendant, said Arnsman did extra work and furnished extra material of the value of about four hundred dollars.

"That on or about the first day of March, 1902, said John V. Arnsman, as such principal contractor, entered into a written contract with this plaintiff, by the terms of which this plaintiff agreed to furnish the material and to do the tin and galvanized iron work on said building, and for which said Arnsman agreed to pay this plaintiff the sum of fourteen hundred dollars as soon as said work was completed, or in progress.

"That this plaintiff did, within a reasonable time thereafter, perform said contract upon his part in a good and workmanlike manner and to the full satisfaction of the architect of said building. That during the progress of said work, some time in the month of May, 1902, this plaintiff demanded of said Arnsman an estimate of the work done by him and the money due therefor. That said Arnsman in pursuance of such demand secured from the architect of said building an estimate of the material furnished and labor performed by this plaintiff, to the amount of about one thousand dollars, and on said estimate the money was paid by said defendant to said Arnsman for this plaintiff, but no part of it was paid to this plaintiff. Thereupon, about the 12th day of June, 1902, this plaintiff notified the defendant in writing of all the facts above stated relating to the contract of this plaintiff with Arnsman, the demand made by the plaintiff, the estimate, the payment of the money to said Arnsman and the fact that this plaintiff had received no part of it; and then in the same writing notified said defendant to withhold from the money remaining unpaid upon his said contract with said Arnsman, the contract

price for this plaintiff's labor and material on said building, the sum of fourteen hundred dollars, the same being for the tin and galvanized iron work.

"That said Arnsman, the principal contractor, did not within ten days thereafter, nor at any other time, in writing or otherwise, notify this defendant that he intended to dispute the claim of this plaintiff, but upon the other hand acquiesced in and consented to the correctness of the same. That said Arnsman was then wholly insolvent, as the said defendant well knew. That said defendant had at the time of receiving said notice remaining in his hands unpaid on said contract the sum of thirty-five hundred dollars. That the work on the contract of this plaintiff was completed on June 25th, 1902; and that on June 19th, 1902, there was paid to this plaintiff on said contract, by virtue of said notice; the sum of five hundred dollars, and that no other or further sum has been paid thereon.

"That there remains due to this plaintiff thereon the sum of nine hundred dollars, together with interest thereon from June 25, 1902.

"That on the 23d day of October, 1902, said Arnsman gave to this plaintiff a written order on said defendant for the sum of nine hundred dollars, to be paid out of the money due on the contract price of said building. That the same was then duly presented by this plaintiff to said defendant for payment and payment thereof was refused by said defendant, although said contract with said Arnsman was fully performed and more than enough money remained in defendant's hands due on said contract to pay plaintiff's claim.

"Wherefore, said plaintiff prays judgment against said defendant for said sum of nine hundred dollars, with interest thereon from June 25, 1902, and for costs of suit, and for such other and different relief as is just and equitable."

Now it will be observed that the action is by a sub-contractor who undertakes to recover from the owner of the building a part of the money due to the head contractor—a proceeding under the mechanic's lien law of the nature of a garnishee process.

To this petition an answer was filed, denying liability upon various grounds. This answer need not be noticed because of the form in which the question is presented. The ruling of the court below proceeded upon the theory that an affidavit to the statement furnished by the sub-contractor was required by the statute upon the subject. That Section 3193 of the Revised Statutes, as amended April 13, 1894, or as it stood prior to that day, required

a sworn, itemized statement and applied to the plaintiff's case. It will be observed that the petition does not aver that the statement furnished was sworn to. But the statute in force did not require a sworn statement. The statute in force was passed on April 18, 1902, and is found in Vol. 95, O. L., pp. 210 and 211. But the theory of the court and of counsel for defendant seems to have been that since the contract between Grasser and the principal contractor and between the plaintiff and the principal contractor were of earlier date than April 18, 1902, therefore, the act of April 18, 1902, did not apply. They seem to have proceeded upon the theory that if it were made to apply it would be given a retroactive effect that would not be admissible and would make it unconstitutional. Though the contracts were of earlier date than April 18, 1902, the notice was of later date; the indebtedness of the owner to the head contractor was of later date, and so this statute of April 18, 1902, would not act upon the contract if given the effect asked for by the plaintiff. It acts upon the state of facts at the time existing. In effect it is not retroactive. Giving to it that effect does not make it obnoxious to the constitutional provision on the subject of retroactive laws. As I have said the statute provides for a remedy in the nature of a garnishee process—finding A indebted to B and B indebted to C, it enables C to reach a fund due to B in the hands of A. That is the result of the process of garnishment and it is the effect of these provisions of the mechanic's lien law with respect to the remedies of sub-contractors.

But even assuming that the giving of the statute this effect and making it applicable to this case would make it in some respects retroactive in its operation, it would not necessarily be unconstitutional for that reason, and it would not necessarily be wrong to give it that operation. In *Trustees, etc.,* v. *McCaughy,* 2 O. S., p. 153, it is said:

"Retrospective laws that violated no principle of natural justice, but that, on the contrary, were in furtherance of equity and good morals, were not forbidden by the Constitution of 1802."

And the same, of course, may be stated of the Constitution of 1852. In support of this is cited 16 Ohio, 47, and 16 Ohio, 97, and *Acheson* v. *Miller,* decided by the Supreme Court at the same

term. Another case which has been referred to on this subject is *Baugher* v. *Nelson,* 9 Gill (Md.), 299, where it is said, among other things:

"But the vested rights thus guarded are those only to which a party may adhere, and upon which he must insist without violating any principle of sound morality; there can be no vested right to do a wrong, or violate a moral duty, or resist the performance of a moral obligation."

Cooley's Constitutional Limitations, at page 358, contains some discussion upon this subject, and the case of *Railroad Co.* v. *Commissioners,* 35 O. S., at page 1, lays down this rule:

"The Legislature can not create a liability for acts as to which there was no liability when they were committed; but where a remedy exists, the Legislature may change it, as well as to acts theretofore as those thereafter done.

"The act of March 7, 1873, which provided a new remedy against those who placed obstructions in public highways, applied as well to existing obstructions as to those subsequently placed therein."

And the case itself presents a very good illustration of the doctrine. I read from the opinion on pages 7 and 8:

"The Legislature, it has been said, can not create a liability for acts as to which there was no liability when they were committed. But 'A party has no vested right in a defense based upon an informality not affecting his substantial rights' (Cooley's Con. Lim.) At least, it is perfectly clear that if a liability exists, the form of the remedy may be changed, or the existing provisions supplemented by other legislative enactments. Such an obstruction as that created in this case is, by the act of 1857 (54 O. L., 130), re-enacted in 1877 (74 O. L., 240), declared to be a nuisance, and the person erecting or maintaining it is liable to indictment, chargeable with the expense of removing it, and moreover liable to the suit of any person injured by such nuisance in his health, comfort, property or the enjoyment of his estate.

"It is clear, therefore, that for this obstruction there was, at the time it was created, a remedy provided by law; and we think the General Assembly might well provide, as it did by the amendment of 1873, this new and additional remedy, and that the amended act applied to obstructions already created. Nor can the statute of limitations apply to such a case as this for reasons stated in the opinion in *Little Miami R. R. Co.* v. *Commissioners of Green Co.*"

Now, as I have pointed out, the old act contained substantially the same remedy for the sub-contractor, but it required that the itemized account should be sworn to. The new act differs from that only in omitting the requirement that the statement shall be sworn to. But even if this were an entirely new remedy given to the sub-contractor, we can not see how this principle underlying the constitutional provision on the subject of retroactive laws can be invoked. The defendant can not insist that he had constitutional rights to pay his money to the head contractor after it had been earned rather than to the sub-contractor to whom the head contractor had become indebted, even though the sub-contractor pursued the methods provided by law for reaching the fund. The law requiring payment to the sub-contractor lays no new obligation upon the head contractor and it imposed no new burden upon him. He is not required to pay any more or to pay in a more burdensome way—he is only required to pay the same amount in such a way as to work out a natural equity in favor of the sub-contractor to whom the money is due. We do not regard this provision of the statute as remedial in the sense in which the word is used in Section 79 of the Revised Statutes, and therefore, it may very well apply to the state of facts which then existed although arising upon contracts theretofore entered into.

But it is said that under this new act the plaintiff has no such remedy as he invokes. The law as it stood before contained this provision, in Section 3201:

"If a head contractor or sub-contractor neglect or refuse to pay, within five days after his assent to or adjustment of any claim, the amount thereof, and costs incurred, to the sub-contractor or material man, laborer, mechanic, or person furnishing materials, the owner, board, officer or clerk or agent thereof, shall pay when due, the whole or a pro rata amount thereof as the case may be as above provided out of subsequent payments, and on his failure so to do, within ten days thereafter, the sub-contractor or material man, laborer, mechanic or person furnishing material may recover against the owner, in an action for money had or received, when due, the whole or a pro rata amount, as the case may be, of his claim or estimate, not exceeding in any case the balance due to the principal contractor."

Now that gives a specific remedy by an action at law to recover the amount in very clear and exact language, but by the act of

April 18, 1902, which modifies a great many of the provisions
of the mechanic's lien law, Section 3201 is repealed and there
is no corresponding section in the new law, that is to say, there
is no section having that number and there is no provision in the
new law in the same language; but we do find in the new law
various provisions upon the subject of the remedy of the sub-
contractor.   We find in Section 3184, this provision:

"The owner, part owner, or lessee shall not be liable to the sub-
contractor, or material man, or laborer for any greater amount
than he contracted to pay the original contractor, but the risk
of all payments made to the original contractor, after such owner,
part owner, or lessees shall have received the notice before men-
tioned, shall be upon such owner, part owner, or lessee, and no
payments made to any contractor after receiving said aforesaid
notice shall defeat any lien of any sub-contractor, material men,
or laborers."

And in Section 3194 is this provision as to the effect of the
notice and the failure to dispute the claim:

"And thereupon subsequent payments under the contract shall
be applied by such owner, his agent or attorney, pro rata among
the lien holders, and all such payments made by the owner, agent
or attorney shall be considered as part payment on said contract
between the owner or contractor."

Then Section 3195 provides specifically for a sub-contractor's
lien upon the premises.   It is urged that these provisions which I
have read all pertain to the lien that a sub-contractor may obtain,
and they are open to that construction, but, in Section 3197 we
have a provision which we think is not open to that construction
and that indicates, as we think, the purpose of the Legislature to
save to the sub-contractor the remedy of an action at law, which
was given to him under the old law:

"The owner of property on which a lien has been taken under the
foregoing sections may notify in writing the owner of a lien or
his agent or attorney, to commence suit thereon; and if he fails
to commence the suit within sixty days after receiving such a writ-
ten notice, the lien shall be null and void; but nothing herein con-
tained shall prevent the claim from being collected as other claims
are collected by law."

And we think that has the effect of saving to the sub-contractor his remedy by an action at law against the head contractor. Entertaining that view of the matter, we hold that the court of common pleas erred in not allowing the plaintiff to introduce his evidence in support of his claim.

It is said that the petition is defective in that it fails to aver that there are no other claims on the fund; but we think that if there are other claims, the defendant might interpose that by way of defense, or by requiring an interpleader to bring in all parties having an interest in the fund.

It is said that the head contractor should have been made a party. The petition avers that the head contractor has surrendered all right to this fund; that he has made an assignment of it to the sub-contractor, so that his presence does not appear to be necessary; but, if the defendant still entertains the opinion that the head contractor should be brought in, he can have him brought in by interpleader.

It is said, too, that it appears by the petition that the claim of the plaintiff has been paid because of the payment of the $500 to him and the payment of $1,000 by defendant to Arnsman for the plaintiff. But we do not think the petition is fairly open to that construction. It is quite evident that the pleader does not mean to aver that the $1,000 was paid to one authorized to receive payment for plaintiff. He is simply reciting the fact that the $1,000 should have been paid to the plaintiff but never came into his hands, and that there is still enough money in the hands of Arnsman to discharge his claim. We think the petition states a good cause of action, and on account of the error which we find in the record, the judgment of the court of common pleas will be reversed and the cause remanded.

*Wertman & Dickey,* for plaintiff in error.

*Seney & Johnson,* for defendant in error.